IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ANDREA H.,[1]                                          No. 3:24-cv-00938-YY

              Plaintiff,                        OPINION AND ORDER

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.


YOU, Magistrate Judge:

      Plaintiff Andrea H. seeks judicial review of the Social Security Commissioner's final

decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set

forth below, the Commissioner's decision is REVERSED and this case is REMANDED for

further proceedings.

**PROCEDURAL HISTORY**

      Plaintiff filed an application for DIB on February 21, 2019, alleging a disability onset

date of September 11, 2017. Tr. 242. The Commissioner denied Plaintiff's claim initially, and on

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

reconsideration. Tr. 111-15, 123-24. Plaintiff filed a written request for a hearing, and a hearing was held before Administrative Law Judge Steve Lynch in June, 2021. Tr. 49-76. The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 29-48. The Appeals Council denied Plaintiff's request for review on August 9, 2022. Tr. 1–7.

Plaintiff timely appealed, and the case was remanded based on the parties' stipulation. Tr. 1940-44. ALJ Richard Geib held a new hearing on March 15, 2024, and issued a written decision on April 5, 2024, again finding Plaintiff not disabled under the Act. Tr. 1826-54. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the agency from which Plaintiff now seeks judicial review.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld

if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533

F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520;

*Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180

F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

between September 11, 2017, the alleged onset date, and September 30, 2021, her date last

insured. Tr. 1832. At step two, the ALJ found Plaintiff had the following severe, medically

determinable impairments: obesity, diabetes, diabetic retinopathy, degenerative disc disease,

hearing loss with tinnitus, carpal tunnel syndrome, migraine headache, Achilles tendon tear,

depression, and posttraumatic stress disorder. Tr. 1832. At step three, the ALJ found no

impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1. Tr. 1833. The ALJ found Plaintiff has the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except she should avoid
> unprotected heights and workplace hazards, should never climb ladders, ropes, or
> scaffolds, could frequently stoop, crouch, kneel and crawl, could occasionally
> climb ramps and stairs, could frequently finger and handle, could frequently use
> her vision for near acuity, could work in quiet or moderate noise levels, but not
> very loud noise levels, and could understand and remember and carry out simple
> and detailed instructions that can be learned in 30 days or less.

Tr. 1835.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 1842. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as marker, cleaner, and office helper. Tr. 1843. The ALJ therefore found Plaintiff not disabled. Tr. 1843.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly discounting her symptom testimony, and (2) failing to correctly evaluate the medical opinions of Stephen J. Bradley, LPC, Courtney Craigan, FNP, and Douglas Beaman, MD.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's]

testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and

other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4

Plaintiff argues the ALJ failed to provide substantial evidence to discount certain portions of her testimony. First, Plaintiff takes issue with the ALJ's decision to discount her claims of debilitating issues with balance and dizziness as inconsistent with the record. Tr. 1836. Plaintiff further argues the ALJ erred in concluding the record did not support the need for an assistive device. Tr. 1838-39. Finally, Plaintiff contends the ALJ did not cite substantial evidence undermining her testimony about PTSD symptoms she suffered following a bout of sepsis in 2017. Tr. 1839.

In considering Plaintiff's testimony overall, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and did not identify evidence of malingering. Tr. 1835. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 1835. Specifically, the ALJ found Plaintiff's symptom allegations conflicted with objective medical evidence in the record and her activities of daily living.[2] Tr. 1835-39.

*A. Objective Medical Evidence*

The ALJ cited conflict with the medical record as one of the reasons he discounted Plaintiff's symptom testimony. Tr. 1835. The ALJ is instructed to evaluate objective medical

---

[2] In her opening brief, Plaintiff argues that it was *per se* error for the ALJ to rely "only on medical evidence" to discount her symptom testimony. Pl. Br. 5-6 (citing SSR 16-3p). As Plaintiff acknowledges in her reply, however, that the ALJ also cited her daily activities as a basis to discount her symptom testimony. Pl. Reply 3-4. Nor is it error to rely "only on medical evidence," as Plaintiff suggests. As long as that medical evidence is "*inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt* 53 F.4th at 498 (emphasis in original).

evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006). The lack of objective medical evidence is insufficient, by itself, to justify discounting a claimant's testimony. *See, e.g., Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chafer*, 157 F.3d 715, 722 (9th Cir. 1998) ("the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). However, when coupled with other permissible reasons, lack of objective medical evidence to support a claimant's allegations may be used to discount a claimant's testimony. *Batson*, 359 F.3d at 1197–98.

The ALJ failed to articulate a clear and convincing reason to discount Plaintiff's allegations about balance issues and dizziness. At the hearing, Plaintiff described her difficulty with balance as "like being on a boat" and that "she has good days and bad days and some days knows 'this is not a walking day' and stays in bed or on the couch." Tr. 1863. Importantly, Plaintiff testified that these balance issues come and go. *See* Tr. 876 (some days she felt absolutely fine but other days dizziness would return); Tr. 986 (same). The ALJ acknowledged Plaintiff's testimony about dizziness, balance issues, and frequent falls, but failed to cite substantial evidence in the record that actually conflicts with it. Tr. 1836. The ALJ discounted

Plaintiff's testimony by highlighting a few instances of improvement or stability: Plaintiff had "a normal gait, with no difficulties with coordination" in October 2017, she was doing "much better" with physical therapy in April 2018, and had a "negative Romberg balance and proprioception test and an intact tandem gait in November 2021." Tr. 1836 (citing Tr. 2418). But these sporadic records do not address the variability of Plaintiff's symptoms. Nor do these few normal findings diminish the ample evidence in the record of substantial evidence of dizziness and balance issues before and after the isolated instances of improvement the ALJ cites. *See* Pl. Br. 6 (citing several examples from throughout the relevant period). Because the evidence the ALJ cited does not meaningfully conflict with Plaintiff's symptom testimony about intermittent issues with balance and dizziness, this was not a clear and convincing reason to discount Plaintiff's allegations that dizziness and balance problems have caused significant problems with walking, standing, and using a computer.

        *B.*      *Daily Activities*

        The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 1836. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant, however, need not be utterly incapacitated to

receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ failed to adequately identify transferable work skills or inconsistencies between Plaintiff's daily activities and symptom testimony, and therefore erred. The Ninth Circuit has instructed that one does not need to be "utterly incapacitated" in order to be disabled. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled") (quoting *Fair*, 885 F.2d at 603). Again, the ALJ picked out a few isolated activities from the four-year relevant period that do not meaningfully conflict with Plaintiff's testimony about on-again, off-again issues with balance, dizziness, and falling. For example, the ALJ noted that in February 2018 Plaintiff went on a seven-day cruise and experienced only a single moment of imbalance while "dancing." Tr. 1836 (citing Tr. 899). Moreover, the ALJ explained that even after a fall where Plaintiff injured her left elbow, she reported that she could continue to do all normal activities of daily living, including lifting a 40-pound bag of cat litter. Tr. 1837 (citing Tr. 2881). These two isolated incidents do not conflict with Plaintiff's testimony because they do not take account of the full scope of the record. For one, the Commissioner's reliance on Plaintiff's February 2018 cruise ignores that her physical condition markedly worsened after she experienced a second bout of sepsis a few months later. Tr. 1867. Likewise, a snapshot of Plaintiff's ability to do certain activities of daily living on July 27, 2021, does not speak to Plaintiff's abilities on her

symptomatic days. *Id.*. In sum, the ALJ erred in rejecting Plaintiff's physical symptom testimony by failing to provide specific, clear and convincing reasons as to why her testimony contradicted, or was undermined by, the objective medical record and her activities of daily living.

C.    *Plaintiff's Mental Health Testimony*

The ALJ did, however, cite clear and convincing reasons to discount Plaintiff's mental health symptom testimony on the basis that it conflicted with objective medical evidence. *See Smartt*, 53 F.4th at 498 (holding conflict with objective medical evidence can be a sufficient basis for discounting a claimant's testimony); 20 C.F.R. § 404.1529(c)(2). At the hearing, Plaintiff testified that she developed PTSD after her first bout of sepsis in 2017. Tr. 1872. Her symptoms included panic attacks, depression, and difficulty with concentration and focus. Tr. 1873. The ALJ discussed Plaintiff's treatment with medication and counseling, noting that despite occasional observations of depressed and anxious mood, her mental status examinations were generally unremarkable with consistent findings of good judgment, intact memory, good fund of knowledge, average intellect, and intact attention and concentration. Tr. 1839 (citing, e.g., Tr. 517, 1140, 1228, 1421, 1451, 1533, 1539-40, 1565, 1640). Moreover, the ALJ acknowledged Plaintiff's allegations of difficulties with concentration and focus, but explained that during the relevant period she was able to engage in such activities including attending book-signing events, going on a seven-day cruise, and setting up a sales event in August 2021 (Tr. 1840, *citing*, *e.g.*, Tr. 517, 892, 899, 1250, 2870, 5441, 5502, 5505, 5597). The ALJ reasonably concluded that objective medical evidence conflicted with plaintiff's testimony about mental health symptoms, and therefore provided a clear and convincing reason to discount this testimony.

## II.    Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791– 92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive he or she finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent

of treatment relationship; frequency of examination); whether there is an examining relationship;

specialization; and other factors, such as familiarity with other evidence in the claim file or

understanding of the Social Security disability program's policies and evidentiary requirements."

*Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D.

Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other

secondary medical factors [if] they find that two or more medical opinions about the same issue

are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL

6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

     Furthermore, the court must continue to consider whether the ALJ's decision is supported

by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims

under our current rules have focused more on whether we sufficiently articulated the weight we

gave treating source opinions, rather than on whether substantial evidence supports our final

decision."); *see also* 42 U.S.C. § 405(g).

    A.    *Stephen J. Bradley, LPC*

     In August 2023, Plaintiff's treating therapist Stephen Bradley, LPC, completed a Mental

Source Statement opining that Plaintiff was not significantly limited or mildly limited in some

basic work activities, but was markedly limited in her ability to complete a normal workday and

workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods. Tr. 4271. Bradley

supported his opinion with the notation that "computer work [is] necessary for work activities."

Tr. 4271. He further opined that as a result of this marked limitation Plaintiff would be off-task

12–20% of a 40-hour week schedule and would likely miss four or more days of work per month

if attempting to work. Tr. 4270. He explained: "In sum trauma injury from medical crises

contribute to impairment of ability to socialize, leave the home and focus sufficiently to perform creative writing and computer work. Thus not able to be the writer she was." Tr. 4272. He opined that these restrictions had existed since September 11, 2017. Tr. 4270.

The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support [the] medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ discounted Bradley's opinion because it was not supported by objective medical evidence and was internally inconsistent. Tr. 1841. The ALJ started by noting that several of Bradley's conclusions were unmoored to his own observations. For example, the marked limitation was not consistent with Bradley's conclusion that Plaintiff had mild to no significant limitations in nearly any other category, including no limitations whatsoever to her ability to concentrate, persist, or maintain pace. Tr. 1841. As the ALJ elaborated, Bradley also failed to cite sufficient objective medical evidence or clinical signs from during the relevant period to support his assigned limitations. Tr. 1841. Instead, Bradley appeared to focus on Plaintiff's ability to perform her past relevant work and not whether Plaintiff could perform any work in the national economy. Tr. 1841. Indeed, Bradley's stated justification for the marked limitation he imposed was that "computer work [is] necessary for work activities," which is not true for much of the work the VE identified as available to Plaintiff in the national economy. Tr. 4271. The ALJ also noted that Bradley did not start treating Plaintiff until February 24, 2022, after her date last insured. Tr. 1841. Retrospective medical opinions are not necessarily irrelevant, but it is reasonable for an ALJ to consider whether a provider like Bradley can accurately opine on Plaintiff's abilities in September 2017 when he only began seeing her in February 2022. 20 C.F.R. § 404.1520c(c)(3)(1)("The length of time a medical source has treated

you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s)."). The ALJ reasonably found the lack of objective medical evidence and internal inconsistency undermined Bradley's assessment of extreme limitations. In doing so, the ALJ sufficiently considered the supportability of Bradley's medical opinion when concluding it was poorly supported by explanation and objective medical evidence.[3]

The ALJ also reasonably assessed the inconsistency of Bradley's limitations with the overall medical record. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably found several aspects of Bradley's opinion inconsistent with the record and therefore unpersuasive. Tr. 1841. For example, the ALJ compared Bradley's significant limitations with Plaintiff's treatment records, "which reflect intact attention and concentration on mental status exams, and no evidence of psychiatric hospitalizations or need for other intensive treatment interventions" Tr. 1841 (citing Tr. 1640, 1736, 2845). The ALJ also noted that Bradley's opinion was inconsistent with the findings of State agency psychological consultants, who found Plaintiff could understand and remember short, simple, routine instructions and carry out simple, routine tasks. Tr. 1841. In sum, the ALJ adequately considered this other evidence in the record and reasonably concluded it was inconsistent with several of the limitations in Bradley's opinion.

---

[3] The ALJ provided a further justification that did not support his conclusion, but this error is harmless because (as noted above) he sufficiently considered the supportability and consistency of Bradley's opinion as required by the relevant regulations. Specifically, the ALJ found that Bradley's opinion was "provided in 2023 and does not state the timeframe it applies to." Tr. 1841. This is incorrect. Bradley clearly indicated that the limitations he identified had existed since September 11, 2017. Tr. 4270. This error was harmless, however, because the ALJ provided several other valid reasons to question the supportability of Bradley's opinion. *See Molina*, 674 F.3d at 1115.

B.  *Courtney Craigan, FNP*

Courtney Craigan, FNP, completed a Medical Report Form in August 2023 identifying Plaintiff's diagnoses: "Diabetic gastroparesis, DMZ, Moderate nonproliferative diabetic retinopathy of both eyes, macular edema, Depression, Hearing loss, NAFLD, Sinus Tachycardia, Charcot's Foot, HTN, posterior vitreous detachment of right eye, Myopia, Alopecia, Migraines, Pulsatile tinnitus, PTSD, IBS." Tr. 4273. Craigan identified Plaintiff's symptoms as "Constant foot pain, Migraine pain, loss of balance, instability, diarrhea, NIV, hair loss, Back pain." *Id.* She opined that Plaintiff's prescribed medications left her "unable to drive or use heavy machinery. Sedating and fatiguing." *Id.* Craigan further opined that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate: "Unable to sit or stand for short or long periods. Mobility is poor." Tr. 4275. She concluded that if Plaintiff attempted to work, she would miss four or more days per month. *Id.* She also concluded that Plaintiff would be unable to meet the demands of full-time sedentary work, and that these limitations had existed since September 11, 2017. *Id.*

The ALJ failed to consider the supportability and consistency of Craigan's opinion with the specificity the Ninth Circuit requires and thus erred. When evaluating medical opinion evidence, "[t]he ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather, than the doctors', are correct." *Garrison*, 759 F.3d at 1012. The ALJ's analysis need not be the only reasonable interpretation of the evidence, but tit must contain enough information to show the "reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

The ALJ discounted Craigan's opinion because it was issued after the date last insured, and because Craigan started treating Plaintiff in 2023. Tr. 1841. As noted above, this can be

relevant, but the Ninth Circuit has held it cannot be the sole reason an ALJ relies upon to reject a retrospective diagnosis. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). The ALJ also concluded that Craigan's "opinion is inconsistent with records prior to the date last insured," but cited no records. Tr. 1842. Finally, the ALJ noted that Craigan based her opinion "in part" on an impairment that arose after the relevant period. Tr. 1842. An ALJ may reject opinions based on impairments that did not exist during the relevant period; however, here, the ALJ failed to specify how much of Craigan's opinion was specific to this later-acquired impairment, and how much of it was unpersuasive as a result. *See Andrea M. v. Berryhill*, No. 6:18-CV-01155-SI, 2019 WL 2578085, at *5 (D. Or. June 24, 2019). Failure to provide clear analysis of supportability and consistency of a medical opinion is error, and the case is remanded so that the ALJ can be more explicit about the level of support for Craigan's opinion, and what "records prior to the date last insured" conflict with the opinion and why.

   *C.  Douglas Beaman, M.D.*

   On September 25, 2023, Plaintiff's treating orthopedist Douglas Beaman, M.D., filled out a Medical Report form. Dr. Beaman indicated he had treated Plaintiff between February 2021 and August 2023. Tr. 4277. She had been diagnosed with a ruptured Achilles tendon in the right foot and Charcot foot on the left foot. *Id.* Dr. Beaman stated that Plaintiff's symptoms included swelling, constant pain, inability to walk on occasion, and special foot boot/brace. *Id.* He opined that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, and that if she attempted to work a 40-hour per week schedule, she would likely miss four or more days per month. *Id.* He opined that Plaintiff would be unable to meet the demands of full-time sedentary work, and that her limitations had existed since February 2021. Tr. 4279.

In finding Dr. Beaman's opinion unpersuasive, the ALJ adequately discussed the strength of the record evidence underlying Dr. Beaman's opinion and its inconsistency with other evidence. Tr. 1842. Again, the supportability and consistency factors require ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support her or her medical opinion," and its consistency with other sources. 20 C.F.R. § 404.1520c(c)(1-2). The ALJ first discounted Dr. Beaman's opinion because it was issued after the date last insured, and based in part on symptoms from a condition (Charcot foot) that did not exist until November 2022. Tr. 1842. The ALJ reasonably considered Dr. Beaman's notes concerning Plaintiff's Achilles tendon rupture (the condition that occurred during the relevant period), observing that by July 2021 Plaintiff had been advancing weight bearing without any issue, and by October 2021 she was no longer attending physical therapy or using pain medications. Tr. 1842 (citing Tr. 2824, 2882). Furthermore, concerning consistency, the ALJ pointed to several records that showed normal and intact tandem gait on multiple occasions. Tr. 1842 (citing Tr. 2822, 2851). The ALJ reasonably found these several normal findings and improvement with treatment undermined the persuasiveness of Dr. Beaman's opinion that, for example, she would miss four or more days per month if attempting full-time work. In doing so, the ALJ sufficiently considered the supportability and consistency of Dr. Beaman's medical opinion when concluding it was poorly supported by explanation and objective medical evidence.

## III.    Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful error by failing to provide specific, clear, and convincing reasons to reject Plaintiff's subjective symptom testimony about her physical symptoms and failing to properly evaluate Craigan's medical opinion. After reviewing the record, however, conflicts and ambiguities remain between the medical record and testimony regarding whether Plaintiff's physical limitations rendered her totally unable to work during the relevant period. The Commissioner's decision is reversed, and this case is remanded for further proceedings so

that the ALJ can adequately evaluate Plaintiff's testimony and Craigan's medical opinion,

reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings

consistent with this opinion.

IT IS SO ORDERED.

DATED: June 4, 2025

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge